# In the United States Court of Federal Claims

No. 11-491 C
(Filed: June 27, 2012)

```
*************************************
                                      *
THOMAS J. SCHNABLE,                   *
                                      *
                 Plaintiff,           *
                                      *
       v.                             *
                                      *
THE UNITED STATES,                    *
                                      *
                 Defendant.           *
                                      *
*************************************
```

*Charles D. Swift*, Swift & McDonald, P.S., Seattle, Washington, for Plaintiff.

*Daniel G. Kim*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant; with whom was *LCDR Michael M. O'Regan*, JAGC, Office of the Judge Advocate General, United States Navy, Washington, D.C.

**DAMICH**, Judge:

## OPINION AND ORDER

In this complaint for military back pay and allowances, Plaintiff Thomas J. Schnable challenges the validity of his court-martial conviction and subsequent dishonorable discharge from the United States Navy. He alleges that his discharge was unlawful and void because, in the appeal of his conviction, he was denied his Sixth Amendment right to counsel of his choice and his Fifth Amendment right to due process. He seeks back pay and allowances in excess of $678,532.39 dating from his 2007 discharge, as well as costs, disbursements, and attorney's fees.

Defendant has moved for dismissal of Plaintiff's complaint for failure of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"), and for failure to state a claim on which relief may be granted, pursuant to RCFC 12(b)(6), or, in the alternative, for Judgment on the Administrative Record, pursuant to RCFC 52.1.

Although in limited circumstances in the Court of Federal Claims a plaintiff may pursue a collateral attack on a military court-martial conviction, here jurisdiction does not yet properly attach because Plaintiff has failed first to exhaust all remedies available to him within the military justice system.

Accordingly, for the reasons stated below, Defendant's motion to dismiss for lack of subject matter jurisdiction is granted.

I.   Background

In September of 1998, the Naval Criminal Investigative Service ("NCIS") initiated an investigation of Plaintiff, a Chief Petty Officer Sonar Technician, on allegations that he sexually abused his 13-year-old adopted daughter and threatened to kill his wife. Compl. ¶ 5-6. Plaintiff was placed in pre-trial custody at the Navy Brig in Bangor, Washington, and was provided military trial counsel, pursuant to 10 U.S.C. § 827. *Id*. ¶ 7, 10.

Additionally, pursuant to 10 U.S.C. § 838(b)(2) and (b)(4), Plaintiff retained civilian legal counsel, J. Byron Holcomb, and designated him as lead counsel. *Id*. ¶¶ 7-9.[1] Plaintiff, a recent law school graduate, avers in his complaint that he "sought out the services of Holcomb in particular, because of Holcomb's reputation as a vigorous appellate advocate." *Id*. ¶ 8. Plaintiff's assigned military counsel assisted as associate counsel.

In February of 1999, Plaintiff was convicted by general court-martial on four specifications of indecent acts with a minor and one specification of communicating a threat. *See United States v. Schnable*, 58 M.J. 643, 645 (N-M. Ct. Crim. App. 2003). He was sentenced to 20-years' confinement, forfeiture of all pay and allowances, reduction to the lowest pay grade, and dishonorable discharge. Compl. ¶ 6. Upon his conviction, he was transferred to the Navy's correctional facility at Miramar, California, in late February 1999. *Id*. ¶ 12.

On petition for clemency before the "convening authority" (the officer, authorized by the Uniform Code of Military Justice, who ordered the formation of the court-martial), pursuant to 10 U.S.C. § 860, Plaintiff received a reduction in confinement to no greater than 15 years, and a six-month suspension of the reduction in his pay grade (on the condition that he assign the money to his spouse for the maintenance of his adopted daughter). *Id*. ¶ 13.

In accordance with 10 U.S.C. § 866, Plaintiff's case was referred to the U.S. Navy-Marine Corps Court of Criminal Appeals ("NMCCA"). *Id*. ¶ 14. Mr. Holcomb continued to serve as lead counsel for Plaintiff, assisted, pursuant to 10 U.S.C. § 870(c), by assigned military appellate counsel, LT. Glenn Gerding, JAGC, USNR. Compl. ¶¶ 15, 16.[2] In October of 2001, while his appeal was pending before the NMCCA, Plaintiff was transferred once again, from Miramar, CA, to Fort Leavenworth, Kansas. *Id*. ¶ 17.

In April 2003, the NMCCA affirmed his conviction and sentence, denying his appeal. *Schnable*, 58 M.J. 643. Plaintiff filed for certiorari to the Court of Appeals for the Armed Forces ("CAAF"), alleging that the NMCCA opinion had improperly incorporated without attribution

---

[1] Plaintiff's Complaint cites Mr. Holcomb's name as "Byron T. Holcomb," although the April 23, 2003, decision of the NMCCA, as reported at 58 M.J. 643 (N-M. Ct. Crim. App. 2003), cites Plaintiff's principal counsel as J. Byron Holcomb.

[2] Plaintiff's Complaint cites LT. Gerding's first name as "Douglas," although the April 23, 2003, decision of the NMCCA cites it as Glenn.

large portions of the Government's brief, suggesting a failure to provide an independent appellate review. Compl. ¶ 19. According to Plaintiff, his appeal to the CAAF was filed by his military counsel, but also listed Mr. Holcomb as his civilian counsel and provided contact information therefor. *Id*. ¶ 20. In its instant motion to dismiss, the Government advises that LT. Gerding had left active duty on September 20, 2002, prior to the decision of the NMCCA, and was not involved in any subsequent appellate action on behalf of Plaintiff. LT. Gerding's successor as assigned military appellate counsel was LT. Marcus Fulton, JAGC, USN. Def.'s Mot. Dismiss at 5.

The CAAF granted Plaintiff's petition for certiorari in January 2004 and in September 2004, in light of its decision on a similar appeal in *United States v. Jenkins*, 60 M.J. 27 (C.A.A.F. 2004), ordered that the NMCCA decision be set aside and that Plaintiff's appeal be remanded back to the NMCCA for review by a wholly new panel.[3] The Administrative Record ("AR") filed herein reflects that Mr. Holcomb was copied on the CAAF's order granting Plaintiff's petition for certiorari as well as on its order for remand. AR 58, 57.

According to Plaintiff, however, neither he nor Mr. Holcomb was notified of the CAAF decision to send Plaintiff's appeal back on remand to the NMCCA, even though "Holcomb had made an appearance before the Court in the matter, and his name, address and phone number were on the brief." Compl. ¶ 22. Nor, he avers, was he or Mr. Holcomb informed of the CAAF action by Plaintiff's assigned military appellate counsel. *Id*.

On October 13, 2004, the Navy JAG office sent a memo of "Instructions for Compliance" with the CAAF remand to the Chief Judge of the NMCCA, enclosing the CAAF order. The memo recites, "Copy to:", among others, Mr. Holcomb and the accused. AR 56.

Upon remand at the NMCCA, Plaintiff was represented by a new military appellate counsel, LT. Stephen Reyes. Def.'s Mot. to Dismiss at 6 n.8. In addition to Plaintiff's initial assignment of errors before the NMCCA, LT. Reyes filed three additional assignments of error in the NMCCA remand. *See United States v. Schnable*, 65 M.J. 566, 569 n.1 (N-M. Ct. Crim. App. 2006). On July 27, 2006, however, the reconstituted NMCCA panel again affirmed Plaintiff's conviction, but found "inappropriately severe" a sentence of confinement for more than 16 years, and granted an additional one-year reduction in confinement as discretionary relief "considering the lengthy processing delays during the appellate review by this court." *Id*. at 574, 576.

Plaintiff complains, however, that

> Following the remand, military counsel, without attempting to contact or inform, and without the authorization of the Plaintiff or Holcomb, prepared and filed a brief on the Petitioners [sic] behalf for the new NMCCA panel's consideration. Despite the fact that he'd been designated as lead counsel by the Petitioner, Holcomb was unaware of the brief and played no role in its preparation or argument.

---

[3] Plaintiff's complaint cites the date of his petition for certiorari and the CAAF's remand as June 29, 2004.

Compl. ¶ 23.

In addition, Plaintiff alleges that neither he nor Mr. Holcomb received a copy of the NMCCA decision on remand or had any notice or knowledge of the ruling. *Id*. ¶ 25.

Furthermore, Plaintiff complains that, without his or Mr. Holcomb's knowledge, his military appellate counsel let pass the deadline within which to file a petition for certiorari to the CAAF, thus allowing the NMCCA remand decision to become final. *Id*. ¶ 26.

The AR reflects that on September 13, 2006, the Navy JAG sent a letter to Plaintiff attaching a copy of the NMCCA decision on remand. AR 5.  The letter, however, was addressed to him at the Navy Brig at Miramar, not addressed to him at Fort Leavenworth.  Furthermore, although the AR further reflects that the September 13, 2006, letter was sent via "certified mail," see AR 3, the "certificate of personal service" in the record, at AR 4, attesting that a copy of the NMCCA remand decision was "personally delivered" to Mr. Schnable, is unsigned and undated and there is no other evidence that the Navy JAG's certified letter was ever received by Mr. Schnable.

According to Rule 19 of the CAAF Rules of Practice and Procedure for timely appeal, Plaintiff had 60 days from the earlier of the date he was notified of the NMCAA's remand decision or the date the decision was mailed to him, after it was served upon appellate counsel of record.  CAAF Rule 19(a)(a) (App. 2-3); *see* Def.'s Mot. to Dismiss at 7 n.10.  The NMCCA decision, therefore, was deemed final on or about November 17, 2006.  AR 3.

Plaintiff's discharge from the Navy became effective on April 30, 2007, upon the issuance of a Certificate of Release or Discharge from Active Duty (DD-214).  Compl. ¶ 27.  He alleges that when he received his discharge he assumed, without having had knowledge of the CAAF decision or the NMCCA decision on remand, that the CAAF had denied his petition for certiorari in the first place.  *Id*. ¶ 27.  He further alleges that he first learned of the CAAF decision and the NMCCA decision on remand from a fellow inmate on or about June of 2007. *Id*. ¶ 28.  He says he immediately contacted Mr. Holcomb, who contacted the court to request a copy of the trial record (but was informed it had been lost).  *Id*. ¶ 29.  Plaintiff was released from confinement on October 16, 2007.  *Id*. ¶ 30.

Plaintiff's complaint therefore cites three causes of action: 1) that the failure to provide Plaintiff or Mr. Holcomb notice and the opportunity to participate in the NMCCA's rehearing of his appeal violated his Sixth Amendment right to counsel of his choice; 2) that the failures further violated his Fifth Amendment right to due process of law and deprived him of the opportunity to seek certiorari anew from the CAAF; and 3) that the violation of Plaintiff's constitutional and statutory right to civilian counsel of choice accordingly renders his sentence and discharge void or voidable.

Because, as he claims, his discharge was unlawful, he asserts an entitlement to back pay and allowances in an amount in excess of $678,532.39.

II.     Defendant's Motion to Dismiss

Plaintiff's Complaint was filed on July 28, 2011.  In October of 2011, Defendant moved to dismiss the complaint, both for lack of jurisdiction and for failure to state a claim on which relief can be granted, or, in the alternative, for judgment on the AR.

Defendant argues foremost that Plaintiff "failed to exhaust his remedies within the military court system as to his claims, and thus this Court does not possess jurisdiction over them."  Def.s Mot. to Dismiss at 8.  Defendant further argues, aside from Plaintiff's subject matter jurisdiction insufficiency, that he fails to state a claim entitling him to relief because the NMCCA remand panel "never affirmatively rejected Mr. Schnable's purported counsel of choice" and he was not denied due process because "Mr. Schnable still had a 'meaningful' opportunity to be heard by the NMCCA."  *Id*.  In addition, the acts and omissions alleged by Mr. Schnable "do not rise to the level of ineffective assistance of counsel."  *Id*.

Finally, even if the court finds that Plaintiff has properly stated a claim for relief, on the facts of the AR, "Mr. Schnable and his civilian counsel either had or should have had timely notice of the NMCCA's remand proceedings" and his counsel's performance was not ineffective.

III.    Standards of Review

In weighing a motion to dismiss for lack of subject-matter jurisdiction, the Court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in [the] plaintiff's favor."  *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).

It is well-established, however, that subject-matter jurisdiction is "a threshold question that must be resolved . . . before proceeding to the merits" of a claim.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998).  "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868).  When this court's jurisdiction is challenged, the plaintiff must demonstrate jurisdiction by a preponderance of the evidence.  *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

Even where the court has jurisdiction over the complaint, it may still be subject to dismissal unless it states a claim that is "plausible on its face," that is, with sufficient factual content from which a court may draw "the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 556 (2007)).  As with a motion to dismiss for lack of jurisdiction, the court must accept the factual allegations to be true, but is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id*.  A complaint fails where the factual allegations do not "plausibly give rise to an entitlement to relief."  *Id*. at 679; *see also Kam-Almaz v. United States*, No. 2011-5059, 2012 WL 2333461, at *2 (Fed. Cir. June 20, 2012).

5

On a motion for judgment on the administrative record, as Defendant argues in the alternative, RCFC 52.1 provides a procedure for parties to seek the equivalent of an expedited trial on a "paper record, allowing fact-finding by the trial court." *Bannum v. United States,* 404 F.3d 1346, 1356 (Fed. Cir. 2005). Unlike summary judgment standards, genuine issues of material fact do not preclude a judgment on the administrative record. *See id.* at 1355-56. Questions of fact are resolved by reference to the administrative record. *Id.* at 1356.

IV.     Discussion

The jurisdiction of the Court of Federal Claims to grant relief against the United States is limited to the extent that the United States has waived its sovereign immunity. *United States v. Testan*, 424 U.S. 392, 399 (1976). Such waiver must be unequivocally expressed, not merely implied. *United States v. King*, 395 U.S. 1, 4 (1969). The principal source of the jurisdiction of the Court of Federal Claims is found in the Tucker Act, which waives sovereign immunity for claims, not sounding in tort, that are founded upon the Constitution, a federal statute or regulation, or an express or implied contract. 28 U.S.C. § 1491(a)(1).

The Tucker Act, however, merely opens the Court's jurisdictional window. It "does not create any substantive right enforceable against the United States for money damages." *Testan*, 424 U.S. at 398. A plaintiff must therefore properly assert the requisite "money-mandating" constitutional, statutory (or regulatory), or contractual violation. *Lovelady Harbor, Inc. v. United States*, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc).

It is well-established that "judgments by courts-martial, although not subject to direct review by federal civil courts, may nevertheless be subject to narrow collateral attack in such courts on constitutional grounds if the action is otherwise within a court's jurisdiction." *Bowling v. United States*, 713 F.2d 1558, 1560 (Fed. Cir. 1983); *see also Augenblick v. United States*, 180 Ct. Cl. 131, 141 (1967) ("There has, however, been an unbroken continuity, going back to the 19th century, in the position that a void court-martial conviction can be attacked through a suit for back-pay in this court"), *rev'd on other grounds*, 393 U.S. 348 (1969).

Similarly, in *Matias v. United States*, 19 Cl. Ct. 635 (1990), the plaintiff sought correction of his military record and back pay by voiding his court-martial conviction on constitutional grounds. The trial court, citing *Bowling*, denied the Government's motion to dismiss for lack of subject matter jurisdiction, but cautioned that a plaintiff "must, however, allege significant defects in the military justice system that rise to a constitutional level before this Court can undertake a collateral review of those proceedings." *Id.* at 638. The Court of Appeals for the Federal Circuit affirmed the trial court's determination of subject matter jurisdiction. The plaintiff's claims, it held, "fall squarely within the Claims Court's Tucker Act jurisdiction." *Matias v. United States*, 923 F.2d 821, 823 (Fed. Cir. 1990).

Here, however, the Government acknowledges this Court's jurisdiction over challenges to convictions under the Uniform Code for Military Justice (UCMJ), but avers that "[s]uch challenges, however, are limited in scope and may not be brought until all appeals authorized by the UCMJ have been exhausted." Mot. to Dismiss at 10. The Government states that Plaintiff

has yet to present his constitutional claims to any military tribunal. Having failed to exhaust his remedies within the military justice system, according to the Government, Mr. Schnable "may not pursue in this Court a collateral attack upon his court-martial convictions." *Id*. at 10.

As an initial matter, it is critical to recognize that civilian courts owe "extreme deference" to judgments of the military court system. *Madsen v. United States*, 48 Fed. Cl. 464, 468 (2000). "Because of the military's overriding interest in maintaining order within its own house, federal courts have properly avoided intervention and interference with respect to disciplinary actions taken by commanders or by military courts." *Williams v. Secretary of the Navy*, 787 F.2d 552, 561 (Fed. Cir. 1986); *see also Schlesinger v. Councilman*, 420 U.S. 738, 753 (1975) (acknowledging "the deference that should be accorded the judgments of the carefully designed military justice system established by Congress").

Accordingly, therefore, civilian courts are loath to undertake review prematurely of a collateral attack on a court-martial conviction. Thus there has also been developed a clear rule regarding exhaustion of military remedies. "The general rule requires that, before seeking to collaterally attack his court martial conviction in the civilian courts, [a plaintiff] must have exhausted all remedies available to him within the military." *Williams*, 787 F.2d at 558. "The purpose of the exhaustion doctrine is to allow the military courts the opportunity to review a question and decide it using their particular expertise." *Cooper v. Marsh*, 807 F.2d 988, 990 (Fed. Cir. 1986). In this regard, the "exhaustion doctrine" advances the values both of efficiency and comity. "The policy underlying the exhaustion rule is twofold. The unused military procedure may be completely dispositive of the alleged defect, thus making intervention by the federal court wholly needless. If the military procedure proves to be adequate, potential friction between the federal and military systems is thus avoided." *Small v. Commanding General*, 320 F. Supp. 1044, 1045 (S.D. Cal. 1970) (citing *Gusik v. Schilder*, 340 U.S. 128, 131-132 (1950)), *aff'd*, 488 F.2d 1397 (9th Cir. 1971). "The concern underlying the exhaustion requirement is not *whether* a federal court may review the constitutionality of a military policy or regulation, but *when* it may do so." *Williams*, 787 F.2d at 560.

The Federal Circuit's decision in *Cooper* explains that a plaintiff "must have given the military courts an opportunity to pass upon the claims he now asserts as bases for attacking his court-martial." *Cooper*, 807 F.2d at 991. Even where a plaintiff has properly exhausted his military remedies and the claims are of significant constitutional defects, "it is not the role of the civil courts to simply reweigh the evidence." *Bowling*, 19 Cl. Ct. at 638. "This court does not have the authority to retry the facts of a court-martial proceeding nor to act as a reviewing court of the decision of the court-martial tribunal." *Flute v. United States*, 210 Ct. Cl. 34, 38 (1976). Rather, the "limited function" of the Court of Federal Claims is "to determine whether the military tribunal gave fair consideration to each of [the plaintiff's] claims. *Matias*, 923 F.2 at 826.

Notwithstanding the gravity of the constitutional errors that Plaintiff asserts, they are nonetheless before this Court without any prior review within the military justice system. Plaintiff argues, however, citing *Martinez v. United States*, 333 F.3d 1295 (Fed. Cir. 2003) (en banc) ("*Martinez 2003*"), that the accrual of his cause of action for back pay as of the time of discharge obviates any exhaustion requirement prior to suit in this court. In *Martinez 2003*, the

7

Federal Circuit first re-affirmed that, in a military discharge case, "the plaintiff's cause of action for back pay accrues at the time of the plaintiff's discharge." *Id*. at 1303. "The service member therefore has the right to sue immediately upon discharge for the funds improperly being withheld." *Id*. The military plaintiff's action in the meantime for correction of military records, by virtue of its being a permissive administrative remedy, thus "does not prevent the accrual of the plaintiff's cause of action, nor does it toll the statute of limitations pending the exhaustion of that administrative remedy." *Id*. at 1304. Plaintiff reasons that, if he is entitled, per *Martinez 2003*, to "sue immediately" for back pay, which is the focus of his current action, he is not bound by any exhaustion requirement to have raised his claims before a military tribunal.

In effect, then, Plaintiff would stretch the import of *Martinez 2003*, addressing the accrual of a cause of action for statute of limitations purposes, to entirely upend the long line of cases establishing the exhaustion requirement applicable to civilian court collateral review of a court-martial conviction. This Court finds no basis for such a reading. Not only should *Martinez 2003* be limited to its accrual-of-cause-of-action context, there is no language in *Martinez 2003*, even in dicta, that the Federal Circuit was intending, even by implication, much less explicitly, to reverse its prior holdings in *Williams* and *Cooper*, for example. Plaintiff's rendering of *Martinez 2003* would, as well, make a nullity of the prescription in *Matias* – that the "limited function" of the Court of Federal Claims is to determine whether the military forum gave "fair consideration" to a plaintiff's constitutional claims – if Plaintiff were enabled to avoid that forum altogether . Indeed, in *Martinez v. United States*, 914 F.2d 1486 (Fed. Cir. 1990) ("*Martinez 1990*"), the Federal Circuit held plainly, "Absent a showing of good cause and prejudice, an appellant's failure to raise his constitutional claims in the military court system bars him from raising them in federal court." *Id*. at 1488.

The Government notes that Mr. Schnable was still in military custody when he says he first learned in June 2007 of the CAAF decision to send his case back to the NMCCA on remand and of the NMCCA's subsequent affirmance of his conviction. The Government further notes that Plaintiff could have filed an extraordinary writ, such as a writ of *coram nobis*,[4] to the NMCCA raising the Fifth and Sixth Amendment claims he alleges here. Even after his military incarceration ended, he has not been impeded from filing such a writ at the NMCCA. *See United States v. Denedo*, 556 U.S. 904, 913 (2009).

Accordingly, the Court finds that, until Plaintiff has exhausted his remedies within the military justice system, his constitutional complaints here fail for lack of subject matter jurisdiction.

While it may appear that Plaintiff makes a compelling complaint of the violation of his Sixth Amendment right to counsel of choice in the appeal of his conviction and sentence before the NMCCA on remand, this Court should necessarily defer to the military justice system to weigh that constitutional complaint in the first instance. Therefore, the Government's motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) is granted and the

---

[4] *Coram nobis* is "[a] writ of error directed to a court for review of its own judgment and predicated on alleged errors of fact." Black's Law Dictionary 362 (8th ed. 2004). Although the writ was originally employed merely for correction of factual errors, it is now understood to encompass constitutional challenges to court-martial convictions. *Ross v. United States*, 43 M.J. 770, 772 (N-M. Ct. Crim. App. 1995).

Court need not address the Government's motion to dismiss for failure to state a claim or for judgment on the administrative record.

The Clerk of Court is hereby directed to dismiss Plaintiff's complaint.

s/ Edward J. Damich
EDWARD J. DAMICH
Judge
